**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: DWIGHT E. AVIS, JR.,
Debtor.

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

No. 97-2683

v.

H. JASON GOLD, Trustee,
Trustee-Appellee.

In Re: DWIGHT E. AVIS, JR.,
Debtor.

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

No. 97-2755

v.

H. JASON GOLD, Trustee,
Trustee-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-888-A, CA-97-889-A, BK-95-12007-SSM)

Argued: December 1, 1998

Decided: June 28, 1999

Before NIEMEYER and HAMILTON, Circuit Judges,
and HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the opinion for the court in Parts I, II, and III, in which Judge Herlong joined. Judge Hamilton wrote a dissenting opinion. Judge Herlong wrote an opinion dissenting from Part IV.

_____

**COUNSEL**

**ARGUED:** Gary Dexter Gray, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. William McCarron, Jr., GOLD & STANLEY, P.C., Alexandria, Virginia, for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, Helen F. Fahey, United States Attorney, Sara S. Holderness, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. H. Jason Gold, GOLD & STANLEY, P.C., Alexandria, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This appeal requires us to determine, as an issue of first impression in this circuit and other circuits, whether the automatic stay provision of § 362(a)(5) of the Bankruptcy Code precludes attachment of an IRS lien on assets acquired by the debtor during the bankruptcy proceeding even though the IRS had, before the bankruptcy petition was filed, done all that was necessary to obtain its lien against the debtor's after-acquired property, pursuant to §§ 6321 and 6323 of the Tax Code.

Both the bankruptcy court and the district court on appeal concluded that the stay imposed by § 362 prevented the IRS's lien on after-acquired property from attaching to an inheritance acquired by the debtor during bankruptcy. These courts, however, did recognize the IRS's lien to the extent of the present value of the debtor's future interest, determined as of the date the bankruptcy petition was filed.

For the reasons that follow, we affirm.

2

I

Dwight Avis was placed in an involuntary Chapter 7 bankruptcy proceeding by a petition filed by his creditors on May 10, 1995. On the schedule of personal property that Avis later filed in the bankruptcy proceeding, he disclosed a contingent interest in the nature of a potential inheritance under trusts of Davis Weir and Maureen Weir, and he attributed to it the value, "UNKNOWN." Davis Weir had, under his will, created a spendthrift trust for the benefit of his wife Maureen and a number of others, including Avis. Maureen was given a power of appointment to convey trust assets to the beneficiaries, including Avis, but not to herself. Her own support and maintenance were administered by trustees. In Maureen's will, she exercised the power of appointment given to her by the Davis Weir trust by bequeathing whatever was left of the trust's assets to the beneficiaries, including a three-percent interest to Avis. Because Avis' interest was contingent on (1) how the Davis Weir trust was administered, (2) whether Maureen Weir would exercise the discretionary power given to her under the trust, and (3) whether any assets would remain, it was unclear to Avis what, if anything, he would inherit from the trust.

During the bankruptcy, on September 3, 1995, Maureen Weir died, leaving three percent of the Weir trust's assets to Avis. But because the trustee in bankruptcy did not then know of Avis' inheritance, the bankruptcy estate was closed on December 15, 1995, without the payment of any funds to creditors. When the trustee learned of the inheritance, he timely moved to have the bankruptcy proceedings reopened in order to bring the inheritance within the estate pursuant to 11 U.S.C. § 541(a)(5)(A), a provision of the Bankruptcy Code bringing into a bankruptcy estate any property inherited by the debtor within 180 days after the filing of the bankruptcy petition. The bankruptcy court granted the motion, and the trustee thereafter liquidated Avis' inheritance for $149,669.

The Internal Revenue Service ("IRS") filed a timely proof of claim against these funds in the reopened bankruptcy proceeding in the amount of $127,306 for taxes, interest, and penalties that Avis owed for earlier tax years. It alleged that $109,819 of its claim was secured by a lien that it had obtained almost a year before Avis was placed

3

in bankruptcy. The IRS had duly filed notices of its tax lien in 1994 in Fairfax County and Shenandoah County, Virginia.

Addressing the IRS's claim, the bankruptcy court ruled that the automatic stay imposed by § 362 of the Bankruptcy Code prevented the IRS from obtaining a tax lien on property received by the bankruptcy estate after the bankruptcy petition was filed, even though notice of the lien had been filed before the bankruptcy petition was filed. Accordingly, it denied the IRS's claim that it had a secured position to the extent of $109,819. The bankruptcy court did, however, recognize that the IRS had a secured position to the extent of the value of Avis' interest in the inheritance as of the date of the bankruptcy petition. The parties stipulated that value to be $1,000 because the inheritance was subject to contingencies. Accordingly, the bankruptcy court entered an order concluding that the IRS held a $1,000 secured claim and that the remaining $108,819 that was claimed to be secured was an unsecured claim against Avis' bankruptcy estate. From this ruling, both the trustee and the IRS appealed to the district court.

The district court affirmed the bankruptcy court's order, and both parties noticed appeals to this court.

II

At the outset, we must recognize the undisputed principles that apply to this case in order to reach the issue. All of a debtor's property becomes part of the bankruptcy estate upon the filing of a bankruptcy petition and therefore becomes subject to the substantive provisions of the Bankruptcy Code. See 11 U.S.C. § 541(a)(1). That property includes all legal or equitable interests of the debtor as of the petition date, wherever located and by whomever held. See 11 U.S.C. § 541(a)(1); see also In re Cordova, 73 F.3d 38, 42 (4th Cir. 1996) (describing the estate created by § 541 as "broad and all-embracing" (citation omitted)). The date of the bankruptcy petition is generally controlling for defining estate property, and property acquired by the debtor after the petition is filed may be retained by the debtor, clear of all claims ultimately discharged by the bankruptcy proceeding. See American Bankers Ins. Co. v. Maness, 101 F.3d 358, 362 (4th Cir. 1996); In re Andrews, 80 F.3d 906, 910 (4th Cir. 1996); see also 5

Collier on Bankruptcy § 541.03, at 541-9 (15th ed. 1998). This general rule, however, is subject to an exception for certain types of after-acquired property, such as inheritances. Section 541 of the Bankruptcy Code provides that a bankruptcy estate includes "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date by bequest, devise, or inheritance." 11 U.S.C. § 541(a)(5)(A).

Property of a bankruptcy estate receives various levels of protection from the post-petition reach of creditors and third parties through the automatic stay provisions of the Bankruptcy Code. Specifically, § 362 of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay" of any litigation, lien enforcement, or other efforts by creditors or third parties to enforce or collect pre-petition claims, except as specifically exempted. 11 U.S.C. § 362(a). This stay serves to "protect[ ] the relative position of creditors [and] to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." Winters v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996) (citations omitted); see also In re Holtkamp, 669 F.2d 505, 508 (7th Cir. 1982) ("The purpose of the automatic stay is to preserve what remains of the debtor's insolvent estate and to provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts" (internal citations and quotation marks omitted)). Indeed, the automatic stay represents "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503 (1986) (quoting legislative history of the Bankruptcy Code).

While the law generally recognizes the creation of liens in after-acquired property, see, e.g., U.C.C.§ 9-204, the applicability of the Bankruptcy Code's automatic stay to the attachment of such liens to assets acquired during the bankruptcy proceedings is not uniform. For instance, when a lien is created in after-acquired property by a consensual security agreement entered into before the filing of the bankruptcy petition, the Bankruptcy Code will not generally recognize attachment of the lien to property acquired post-petition. See 11

5

U.S.C. § 552(a). But § 552(b) provides specific exceptions. In addition, when state and local governments have liens for ad valorem property taxes that come due post-petition, the Bankruptcy Code recognizes those liens and exempts them from the automatic stay. See 11 U.S.C. § 362(b)(18). The Code does not, however, address whether the automatic stay provision precludes attachment of other statutory or non-consensual liens in after-acquired property when the property comes into the estate after the bankruptcy petition is filed. More particularly, it does not address whether a tax lien created by 26 U.S.C. § 6321 is permitted to attach to property acquired by the estate post-petition.

The lien created by § 6321 of the Internal Revenue Code for taxes, interest, and penalties owed, applies in favor of the United States "upon all property and rights to property, whether real or personal, belonging to [the taxpayer]." 26 U.S.C.§ 6321. Liens created by § 6321 become "valid" as against third parties upon the IRS's filing notice of the lien in any recording office within the state in which the property is located. See 26 U.S.C. § 6323(a), (f). Moreover, liens created by § 6321 apply not only to property in which the taxpayer already has an interest, but also to property acquired by the taxpayer after the government files notice of its lien. See United States v. McDermott, 507 U.S. 447, 448 (1993) (citing Glass City Bank v. United States, 326 U.S. 265 (1945)).

Accepting these principles, the IRS contends that the district court erred in not recognizing that its claim for $109,819 was entitled to secured status on the ground that the IRS took all steps necessary to perfect its lien before the bankruptcy petition was filed. Accordingly, it contends that its tax lien attached to Avis' inheritance before the bankruptcy and that therefore the automatic stay imposed by 11 U.S.C. § 362 had no effect on the property already encumbered by the lien when it entered the bankruptcy estate. Alternatively, the IRS contends that § 362(a)(5), by its terms, only stays affirmative post-petition "act[s]" to secure pre-petition claims, and that the stay would not apply to liens that attach to debtor's property"by operation of law," such as those arising under § 6321 of the Internal Revenue Code.

Likewise accepting the stated principles, the trustee in bankruptcy maintains that no lien of the IRS could attach to Avis' inheritance

6

before the petition date because the property was not then in existence. He argues that the inheritance automatically passed into the bankruptcy estate post-petition by reason of 11 U.S.C. § 541(a)(5)(A) "without ever becoming property of the Debtor under that section." Accordingly, it could not be subject to the IRS's lien against the debtor. Alternatively, the trustee argues that attachment to post-petition property is an "act" stayed by § 362(a)(5) of the Bankruptcy Code. To construe the stay otherwise, he argues, would allow the IRS to improve its position post-petition at the expense of unsecured creditors.

III

The public policy favoring enforcement of statutorily created tax liens is important to the national tax collection effort. Similarly, the public policy underlying the § 362 stay of enforcement efforts during bankruptcy proceedings is essential to the equitable order necessary for administering fairly the assets of a debtor in bankruptcy. This tension between the IRS's lien in after-acquired property created by § 6321 of the Tax Code and the bankruptcy policy of protecting estate property from creditors' efforts to improve their positions can be resolved only by a closer examination of the nature of the IRS's lien and the reach of a § 362 stay.

The IRS's lien is created by statute on amounts owed the IRS for taxes, interest, and penalties. See 26 U.S.C. § 6321. It becomes valid against third persons upon the IRS's filing of notice of the lien in the manner prescribed by statute. See 26 U.S.C.§ 6323(a), (f). In determining when a lien created by § 6321 in after-acquired property becomes "perfected," the Supreme Court analogized the tax lien to security agreement liens regulated by Article 9 of the Uniform Commercial Code, concluding that a tax lien in after-acquired property does not attach to such property until the debtor actually acquires the property and therefore is not "perfected" until that time. See McDermott, 507 U.S. at 451-53. Until the lien attaches to the property, it is "inchoate." Id. at 452 n.5. Moreover, the Court rejected the notion that a lien in after-acquired property became perfected when there was nothing more to be done by the creditor to obtain a lien. Id. at 451 & n.4.

7

In this case, therefore, the IRS had a lien in all of Avis' property in existence at the time the bankruptcy petition was filed and an inchoate lien in property that he might thereafter acquire, such as his inheritance from the Weir trust. But the IRS's inchoate lien in the inheritance could not be perfected until Avis actually received the inheritance. Thus, only when Maureen Weir died in September 1995, conveying an inheritance to Avis, could the IRS lien become perfected; the lien could not attach to the inheritance until it came to Avis. But at the same time it came to Avis, it also became property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A) and thus became subject to the provisions of the § 362 automatic stay. Accordingly, we must determine whether § 362 stays the perfection of the IRS's lien at the time the estate received the inheritance even though the lien would otherwise have become "perfected" as a matter of law.

The applicable section of the automatic stay provision provides that the bankruptcy petition stays "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(5) (emphasis added). The IRS argues that because its lien became perfected by operation of law and not by any act by it or on its behalf, § 362(a)(5) does not apply because the provision explicitly stays only "act[s]." We believe that this argument reads the term "act" too narrowly for the demands of its context. While "act" is defined as "the doing of a thing," or a "deed," it is also defined to mean "a state of real existence rather than possibility." Merriam Webster's Collegiate Dictionary 11 (10th ed. 1994). By advancing a narrow definition of "act," the IRS would have its pre-petition claim secured at the expense of unsecured creditors. We believe that this argument overlooks a chief aim of § 362(a)(5), which is to prevent the post-petition perfection of interests in a debtor's bankruptcy estate.

Our conclusion that the stay of § 362 was intended to bar the perfection of federal tax liens is bolstered by Congress' recent addition of § 362(b)(18) to the Bankruptcy Code. In 1994, Congress enacted § 362(b)(18) to exempt from the stay provision the perfection of liens resulting from state or local property taxes. It provides that § 362(a) does not operate as a stay against "the creation or perfection of a stat-

8

utory lien for an <u>ad valorem</u> property tax imposed by the District of Columbia, or a political subdivision of a State, if such tax comes due after the filing of the petition." <u>See</u> 11 U.S.C. § 362(b)(18). If the perfection of statutory liens resulting by operation of law were generally excluded from the automatic stay of § 362(a), Congress would not have found it necessary to add § 362(b)(18) exempting the perfection of liens created by state or local law. Because that section applies only to state and local tax liens, it must be inferred that Congress did not intend to exempt the perfection of federal tax liens. <u>See</u> 3 <u>Collier on Bankruptcy</u> § 362.05[17], at 362-74. This conclusion finds further support in § 362(b)(18)'s legislative history. <u>See</u> H. Rep. No. 103-835, at 58-59 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 3340, 3367-68 (stating that Congress added § 362(b)(18) to"allow <u>local governments</u> to utilize their statutory property tax liens in order to secure the payment of property taxes" without violating the automatic stay (emphasis added)).

Our conclusion also finds support in § 362(b)(9). As amended, that section permits governmental units to conduct audits, issue notices of tax deficiencies, make demands for tax returns, and assess taxes with notices of demands for payment. <u>See</u> 11 U.S.C. § 362(b)(9). Significantly, however, any tax lien that arises as a result of an assessment cannot take effect with respect to property in the bankruptcy estate unless the tax is nondischargeable and the property to which the assessment will attach is transferred out of the estate or will otherwise revest in the debtor. <u>Id.</u> The plain inference flowing from the existence of the § 362(b)(9) exception is that all other efforts to assess or collect taxes remain stayed under § 362(a), unless otherwise exempted under the Bankruptcy Code, such as in § 362(b)(18) (relating to local property taxes). In short, the inclusion of sections such as § 362(b)(18) and § 362(b)(9) as exceptions to the automatic stay suggests that Congress did not intend to exclude the perfection of a federal tax lien from the automatic stay of § 362(a). <u>See</u> 3 <u>Collier on Bankruptcy</u> § 362.05[9], at 362-67.

The IRS argues for a negative inference arising from§ 552(a) of the Bankruptcy Code which precludes perfection of liens in after-acquired property when the property is acquired by the estate after the petition for bankruptcy is filed. The IRS maintains that because § 552(a) applies to consensual "security agreements" and not to statu-

9

torily created liens, by implication, statutorily created liens can apply to after-acquired property coming to the estate. We conclude, however, that this implication from § 552(a) cannot be read to vitiate the stronger implication drawn from Congress' specific addition of § 362(b)(18) to the stay provisions. Because § 362(b)(18) explicitly addresses the perfection of statutory liens -- exempting from stay only state and local property tax liens and not federal income tax liens -- the conclusion to be drawn is that the perfection of federal tax liens was left to be stayed by § 362(a).

Accordingly, we hold that the attachment of a federal tax lien created under 26 U.S.C. § 6321 to property acquired during the bankruptcy proceedings is an "act" that is stayed by operation of § 362(a)(5).

IV

We must also address the trustee's cross appeal, challenging the district court's recognition of the IRS's secured claim to the extent of $1,000. That amount represented the stipulated value of Avis' interest in the Weir trust as of the bankruptcy petition date.

As a general proposition, the district court was applying the principle that all of Avis' property which existed at the time of the petition in bankruptcy was subject to the IRS's lien. Since Avis' interest in the Weir trust was valued as of that time at $1,000 by stipulation, we can find no basis to reverse the ruling. Even if the bankruptcy court made the valuation as a finding of fact, we would not conclude that the finding constituted clear error.

As a named beneficiary, Avis was only entitled to a distribution from the Davis Weir trust if the trustee did not distribute all of the trust's income to Maureen Weir and if Maureen Weir exercised her power of appointment in Avis' favor. While the interest was a real one in that Davis Weir had died in 1975 and his will was therefore fixed, it was contingent on the existence of trust assets and Maureen Weir's power of appointment. See Brown v. Saake , 190 So.2d 56, 58 (Fla. Dist. Ct. App. 1966) ("An estate is contingent if, in order for it to become a present or vested estate, the fulfillment of some condition precedent other than the determination of the preceding freehold

10

estate is necessary" (citation omitted)) (The parties have stipulated that Florida law governs the interpretation of the Weir trust). Even though contingent, Avis' interest possessed some value, however small. Because the record contains nothing suggesting that any finding attributing a $1,000 value to this interest was unreasonable or otherwise in error, we affirm the district court's order recognizing the IRS's secured claim to the extent of $1,000.

For the foregoing reasons, we affirm the district court's judgment holding that the IRS's claim against Avis' bankruptcy estate is secured to the extent of $1,000 and unsecured for the remainder.

<u>AFFIRMED</u>

HAMILTON, Circuit Judge, dissenting:

I agree with the majority's conclusion that the IRS had an inchoate lien on Avis' potential inheritance from the Weir trust at the time the bankruptcy petition was filed. I also agree with the majority's conclusion that "only when Maureen Weir died in September 1995, conveying an inheritance to Avis, could the IRS lien become perfected; the lien could not attach to the inheritance until it came to Avis." <u>Ante</u> at 8. For several reasons, however, I do not agree with the majority's subsequent conclusion that § 362(a)(5) operated to prevent the IRS's tax lien from attaching to the inheritance. On this point, I respectfully dissent.

This appeal involves what is known in bankruptcy parlance as the "claw-back" provision of the Bankruptcy Code. In relevant part, the claw-back provision brings into the bankruptcy estate, <u>inter alia</u>, "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--(A) by bequest, devise, or inheritance . . . ." 11 U.S.C. § 541(a)(5)(A). In essence, the claw-back provision extends the petition date six months for the purpose of capturing for the bankruptcy estate property that the debtor acquires within six months after the initial petition date. Thus, the claw-back provision treats such after acquired property of the debtor as though the debtor had acquired it prior to the initial petition date.

11

Congress enacted the claw-back provision in order to prevent debtors from manipulating the bankruptcy petition date so as to deprive creditors of certain assets. See In re Woodson, 839 F.2d 610, 619-20 (9th Cir. 1988).

In this case, Avis inherited approximately $150,000 from Maureen Weir within 180 days of May 10, 1995, the date Avis' creditors filed the Chapter 7 petition. By virtue of the claw-back provision, Avis' inheritance should be treated as though it was acquired prior to the date the petition was filed. Treating the inheritance as such, the IRS's lien was perfected by operation of law. Indeed, all parties agree that if Avis had already inherited the approximately $150,000 pre-petition, it would have entered the bankruptcy estate encumbered by the IRS's tax lien. Notably, treating the inheritance as entering the bankruptcy estate encumbered by the IRS's tax lien fully coincides with the purpose of the claw-back provision to prevent debtors from manipulating the bankruptcy petition date so as to deprive creditors of certain assets. See In re Woodson, 839 F.2d at 619-20.

The majority holds that the inheritance entered the bankruptcy estate unencumbered by the IRS's tax lien. In reaching this holding, the majority necessarily holds that property subject to the claw-back provision is also subject to § 362(a)(5). However, this holding ignores the plain language of the claw-back provision, which expressly contemplates the bankruptcy estate receiving only the actual interest in the inheritance that the debtor hypothetically would have possessed had he acquired it or been entitled to acquire it on the original petition date.

Succinctly put, § 362(a)(5) is irrelevant to this case. Section 362(a)(5) essentially prevents a creditor from encumbering a debtor's property post-petition. In contrast, the claw-back provision instructs courts to treat property acquired within 180 days of the petition date as if the debtor owned the property pre-petition. In this case, that means recognizing the inheritance as entering the bankruptcy estate encumbered by the IRS's tax lien. To hold as the majority does improves the position of Avis' unsecured creditors at the expense of one of his secured creditors, which is an anomalous result obviously not contemplated by the plain language of the claw-back provision.

12

For these reasons, I would hold that the IRS has a secured claim against the bankruptcy estate in the amount of $109,819 for federal income taxes, penalties, and interest owed by Avis for certain previous tax years. Accordingly, I would reverse the district court's affirmance of the bankruptcy court and remand the case to the district court with instructions to remand the case for further proceedings consistent with this holding.*

HERLONG, District Judge, concurring in part and dissenting in part:

I concur with Parts I, II, and III of Judge Niemeyer's opinion and agree that the automatic stay provision of the Bankruptcy Code operated to prevent the IRS's tax lien from attaching to the inheritance. Yet I disagree with the conclusion that the IRS had a secured claim to the extent of $1000. Accordingly, I respectfully dissent to Part IV of Judge Niemeyer's opinion.

As correctly stated in Part IV of Judge Niemeyer's opinion, the $1000 "represented the stipulated value of Avis' interest in the Weir trust as of the bankruptcy petition date." Ante at 10. Part I of Judge Niemeyer's opinion, however, states that the $1000 stipulation represented "the value of Avis' interest in the inheritance as of the date of the bankruptcy petition." Ante at 4 (emphasis added). This latter description is inaccurate because Avis' interest in the Davis Weir trust is distinct from his interest in the inheritance.

The bankruptcy court allowed the IRS to have a lien "in the post-petition distribution of principal from the trust under the will of David Weir only to the extent of the present value of Avis' interest in the trust as of the filing dated of the chapter 7 petition." (J.A. at 90.) The parties then stipulated that "the present value of the debtor's interest in the trust as of the filing date" was $1000. (J.A. at 92.) Thus, the description employed by Judge Niemeyer's opinion in Part IV is the correct characterization of the $1000 stipulation--it represents Avis'

_____

*Because, in my view, the IRS's tax lien was fully secured via Avis' post-petition inheritance, I would reverse the district court's affirmance of the bankruptcy court's determination that the IRS is only entitled to a secured lien of $1,000, the stipulated value of Avis' interest in the Weir trust as of the bankruptcy petition date.

13

interest at the time of the filing in the <u>trust</u> , not the inheritance. If the "debtor's interest in the trust as of the filing date" is closely examined, however, it becomes clear that there are three "interests" that Avis had in the trust at that time. None of these interests can provide a basis for giving the IRS a secured lien. Accordingly, the district court erred in allowing the IRS to have a secured claim to the extent of $1000.

The first of Avis' three interests in the trust at the time of the filing date was Avis' interest in receiving income from the trust ("income interest"). This income interest was a valid property interest that clearly had some value at the time of the filing of the petition. Thus, it may appear that the IRS's lien should have attached to it. Avis' income interest, however, was effectively listed on his bankruptcy petition as exempted from the bankruptcy estate. When reopening the case, the bankruptcy court specifically stated that "exempted was [Avis'] right to the income from the trust." (J.A. at 24.) Therefore, the income interest may not serve as a basis for a secured lien by the IRS.

The second of Avis' three interests in the trust at the time of the filing was a contingent remainder interest in the trust ("contingent remainder interest"). This interest was contingent upon (1) Maureen Weir not exercising her power of appointment over the assets of the trust, and (2) Avis living twenty-five years after the death of Maureen Weir. <u>See</u> (J.A. at 86.) If these two events occurred, then Avis would receive a distribution of three percent of the remaining corpus of the trust. There is nothing unusual about this interest--Avis was simply one of several potential remaindermen under the trust.

Avis' contingent remainder interest was a valid property interest that clearly had some value at the time of the filing of the petition. Thus, it may appear that the IRS's lien should have attached to it. This interest, however, was effectively listed on the petition as exempted from the bankruptcy estate. When reopening the case, the bankruptcy court specifically stated that "exempted was . . . any contingent remainder interest not maturing within the 180-day period after the commencement of the case." (J.A. at 24.) Avis' contingent remainder interest did not mature within the 180-day period after the commencement of the case. Indeed, it could not mature in such a period because it could not mature until twenty-five years after the

14

death of Maureen Weir, and she was still alive at the commencement of the case. Consequently, the contingent remainder interest was exempted and therefore may not serve as a basis for a secured lien by the IRS.

The third of Avis' three interests in the trust at the time of filing was the possibility that Avis might inherit a portion of the corpus of the trust via Maureen Weir's exercise of her testamentary power of appointment in his favor, thereby terminating the trust early and distributing a portion to Avis. This "expectancy interest," as I will call it, was not a property interest at all--even though it materialized into a very real $150,000 inheritance--because under Florida law "[a] proposed devise contained in a will conveys no interest to the devisee so long as the testatrix is alive." Bowman v. Yelvington, 280 So. 2d 497, 499 (Fla. Dist. Ct. App. 1973). Because Maureen Weir was alive at the time of the filing, no interest was conveyed via her will. The bankruptcy court itself stated that the possibility of inheriting under the power of appointment was a "mere expectancy" that did not rise to the level of a property interest at the time Avis filed the bankruptcy petition. (J.A. at 85.) Specifically, the court stated: "Since Maureen Weir remained free to change her will at any time prior to her death, the language in the will exercising her power of appointment in favor of Avis could have no legal effect, and conveyed no interest in the principal of the trust, until she died." (J.A. at 86-87 (emphasis added).)

Because Avis' expectancy interest under the power of appointment was not a property interest at the time of the filing of the petition, there was nothing to which the IRS's lien could attach. Neither could Avis' expectancy be considered one of the contingencies under his vested contingent remainder interest. The expectancy interest did come to fruition in the form of a $150,000 inheritance, but this inheritance did not exist until Maureen Weir's death, which came after the filing of the petition. At that point, the automatic stay provision prohibited the IRS's lien from perfecting. At the time of filing, however, the possibility of an inheritance within 180 days was a "mere expectancy" and not a property interest. Therefore, it may not serve as a basis for a secured lien by the IRS.

15

When the bankruptcy court examined this issue, it recognized that the expectancy interest had no value. It then allowed the IRS to have a secured lien on the value of Avis' income interest and vested contingent remainder interest in the trust. This value was later stipulated to be $1000.* However, the court erred in allowing the lien to be secured because these two interests, as explained above, had been properly exempted. It is peculiar that the bankruptcy court declared these interests to be exempt when it reopened the case and then allowed a secured claim against their value in a later order. It appears that the bankruptcy court simply forgot that these interests had been held to be properly exempted. Regardless of the reasons for the inconsistency, the law of the case was that the interests were exempted, and the district court erred in allowing the secured claim on the basis of exempted interests.

Furthermore, the fact that the distribution of the inheritance itself was not exempted does not alter the above analysis. The bankruptcy court stated that "the right to the distribution was not effectively claimed exempt and has not passed out of the bankruptcy estate." (J.A. at 25.) This statement is correct. It is important to remember that the inheritance did not exist at the time of the filing and that Avis' possibility of receiving the inheritance was not a valid property interest. This expectancy is entirely distinguishable from Avis' interest in the trust at the time of the filing (i.e. his income interest and contingent remainder interest), which was exempted. The reason that the distribution of the inheritance was not exempted was because Avis' description of his interest in the Davis Weir trust on the schedule of exemptions "did not fairly place the trustee and creditors on notice of the debtor's immediate right to a 3% lump sum distribution of principal arising from Maureen Weir's exercise of her power of appointment." (J.A. at 25.) Avis' description of his interest in the Davis Weir trust on the schedule of exemptions <u>did</u>, however, place the trustee and creditors on notice of his income interest in the trust and of his

_____

*To the extent the $1000 represented Avis' expectancy interest in the inheritance, the lower court erred because Avis' expectancy interest did not rise to the level of a property interest and thus could not be assigned a value. Because the bankruptcy court had just made this determination, it does appear that it included the value of Avis' expectancy interest in the amount of the secured lien.

16

contingent remainder interest in the trust. Thus, these interests were exempted, whereas the inheritance was not.

In fact, the bankruptcy court, in finding that the inheritance was not exempted, distinguished Avis' eventual right to a three-percent lump sum distribution of principal (arising from Maureen Weir <u>not</u> exercising her power of appointment and from Avis living twenty-five years past the death of Maureen Weir)--i.e. Avis' contingent remainder interest--from Avis' immediate right to a three-percent lump sum distribution of principal (arising from Maureen Weir's exercise of her power of appointment)--i.e. the inheritance. It held that the former was exempted and that the latter was not. <u>See</u> (J.A. at 24-25). I am in full agreement.

In sum, there was no interest in the trust or in the inheritance at the time of the filing of the petition to which the IRS's lien could attach. The income and contingent remainder interests were properly exempted, and the expectancy interest in the inheritance was not a property interest. Thus, whether the $1000 represented the exempted income interest, the exempted contingent remainder interest, or the non-existent expectancy interest--or some combination of the three-- it was error for the bankruptcy court to hold that the IRS had a secured lien in that amount.

I also would like to point out an alternative resolution of the case based upon the above discussion. If Maureen Weir's death and resulting exercise of her power of appointment terminated the trust-- thereby terminating Avis' income and contingent remainder interests --the property to which the IRS's lien attached no longer existed when the IRS instituted proceedings to use this property as a basis for its secured claim. Thus, even if this property were not properly exempted, it ceased to exist and consequently could not form the basis of a secured claim.

In conclusion, the IRS has no secured claim to the extent of $1000. Accordingly, I would reverse the district court's affirmance of the bankruptcy court on this issue.

17